Nos. 41,054 and 41,162

WALTER MEYER, doing business as MEYER CASING CREW, *Plaintiff*, v. RICHARD B. SCHMIDT, et al., *Defendants;* C. B. MURRAY, C. L. HANES and HERBERT B. SHUMAKER, *Appellees;* HELEN L. VANCE and UNION NATIONAL BANK in Kansas City, Missouri, nonresident, ancillary co-executors of the Estate of W. Harry Vance, also known as William Harry Vance, Deceased, *Appellants.*

(334 P. 2d 345)

Opinion filed January 24, 1959.

*J. Eugene Balloun,* of Russell, argued the cause, and *Oscar Ostrum,* of Russell, was with him on the briefs for the appellants.

*Clifford R. Holland, Jr.,* of Russell, argued the cause, and *Marvin E. Thompson* and *George W. Holland,* both of Russell, were with him on the brief for the appellees.

The opinion of the court was delivered by

JACKSON, J.: These are two appeals from one case in the court below.

The proceeding in district court involved the settlement of the claims and mechanics' liens growing out of the drilling of an oil well—an oil well which came in as a dry hole.

The well was begun by defendant Richard B. Schmidt, but he stopped his work and joined the armed forces before the well was completed. There were some eighteen other persons who owned interests in the well besides Schmidt. These "interest holders" completed drilling the well after Schmidt ceased work.

The plaintiff Walter Meyer brought suit for the sum of $420 and foreclosure of his lien. All other lien holders, together with Schmidt and the other interest holders, were made parties to the suit.

C. B. Murray, C. L. Hanes and Herbert B. Shumaker, who are the appellees in this appeal, were cross-petitioners below and sought judgment for their claims and foreclosure of their own liens.

The co-executors of the estate of W. Harry Vance, deceased, appeal from orders refusing to vacate the judgment entered against their testator. Harry Vance was one of the interest holders in the drilling venture.

Actually the only question in both of the appeals is as to the jurisdiction of the district court over the person of W. Harry Vance at the time judgment was entered against him in this action. No further notice need be taken of the fact that there were two appeals filed.

Turning to this vital question of jurisdiction, the evidence shows the following facts:

The original petition in the suit was filed by the plaintiff on October 8, 1953. Harry Vance was named as a defendant in the petition along with other interest holders in the oil venture. Vance was a resident of Kansas City, Missouri, and no summons was issued for him. The court takes notice, however, that Vance's executors, the appellants in this appeal, have caused ancillary administration of his estate to be begun in Russell County. Thus, it would seem evident that Vance at all times must have had property subject to the jurisdiction of the court even though he was a nonresident of the state (G. S. 1949, 60-901; G. S. 1957 Supp. 60-2525 [3]).

At the time the action was begun and on November 16, 1953, a meeting of the various interest holders was held in Kansas City and it was agreed that Adolph Kramer, one of their number, should write to Richard M. Driscoll, a lawyer of Russell, and employ him to represent all of the interest holders and endeavor to prevent a personal judgment being entered against them. The evidence is clear that Vance, who was not present at the meeting, was advised of the decision to employ Driscoll and that he approved of such action. Driscoll testified that he had talked with several of the interest holders before this time; that at that time he advised them that he had a bill in his office against the well. They advised him the bill would be paid along with others. Mr. Driscoll accepted the employment and filed a motion for additional time to plead on behalf of all of the interest holders, including Vance, on November 24, 1953. On February 2, 1954, Keltner, one of the interest holders, wrote Driscoll enclosing a check for $50 to cover attorney fees "as per statement."

In February, 1954, the interest holders seem to have paid all the bills due on the well which were incurred after Schmidt left the

project. They were maintaining that the bills incurred by Schmidt should be paid by him. The suit for this balance seems to have been continued throughout the years 1954 and 1955, apparently through the efforts of Mr. Driscoll on behalf of the interest holders and awaiting Schmidt's return from the armed services. Finally, it appeared that Schmidt might not return.

On December 9, 1955, Mr. Driscoll wrote Ray Williams, one of the interest holders with whom he had dealt in the past, to the effect that counsel for the creditors were demanding that the case proceed; that it would be for trial in the January, 1956 term of court; that cross-petitioners were contending that the interest holders were joint mining partners with Schmidt. He advised Williams that he would not be interested in representing the defendants at the trial unless he should be paid an attorney fee in advance. He asked that the interest holders get together and decide what they wished to do in the matter and advise him of their desires.

Mr. Driscoll did not hear from Williams or from any of the other defendant interest holders.

The further proceedings in the court below may be gleaned from a portion of the trial court's findings:

"6. At the opening of the January 1956 term of court the action came on for trial, counsel for defendant Vance and certain other named defendants having withdrawn and filed notice thereof, and such defendants not appearing and being long in default, judgments were entered on January 3, 1956, as shown by journal entry filed January 23, 1956.

"7. Subsequently defendant Harry W. Vance died, and on September 14, 1956, Helen L. Vance and the Union National Bank of Kansas City, both non-residents of Kansas, were appointed co-executors and were granted Ancillary Letters Testamentary by the Probate Court of Russell County, Kansas. On the same date said non-resident co-executors filed their appointment of attorney Oscar Ostrum of Russell, Kansas, as their resident agent.

"8. On February 7, 1957, defendants C. L. Hanes, C. B. Murray and Herbert B. Shumaker, who on January 3, 1956, had received judgments (see finding 6 above) against defendant Harry W. Vance and certain other defendants, filed herein their motion to revive said judgments against said co-executors of the estate of Harry W. Vance, deceased.

"9. On March 12, 1957, such order of revivor was entered herein.

"10. On April 8, 1957, application to vacate said judgments, and on April 12, 1957, a petition to vacate judgments, were filed herein by said co-executors. This is a direct attack on said judgments.

"11. After entry of the motion for additional time to plead, November 24, 1953 (See finding No. 5 above) a general appearance, on behalf of defendant Harry W. Vance, said defendant did nothing to repudiate the authority of

his attorney in filing same, or show his disapproval of said general appearance. There is direct evidence that he was informed attorneys Driscoll were employed on his and certain other defendants behalf shortly after the action had been commenced, at which time he exhibited his approval (see finding No. 2 above), and his conduct then and since ratified authority of attorneys Driscoll. There is also no evidence indicating that defendant Harry W. Vance did not actually know of such motion and general appearance on his behalf.

"12. The said application to vacate judgments and said petition to vacate judgments filed by said co-executors should be denied, and such revived judgments should not be vacated."

It appears that the trial court was fully justified in finding that an entry of appearance had been made for defendant W. Harry Vance and that the court had personal jurisdiction over him at the time of the judgment entered on January 3, 1956.

In *Kackley State Bank v. Nichols*, 162 Kan. 648, 179 P. 2d 186, where it was sought to set aside a judgment on the ground that an attorney who had made an appearance for the defendant was not authorized to do so, this court said:

"It is well settled that when an attorney appears in an action to represent parties, the presumption is that he has the authority to do so. (*Overlander v. Overlander*, 129 Kan. 709, 284 Pac. 614; *Clark v. Lilliebridge*, 45 Kan. 567, 26 Pac. 43; *Lamme v. Schilling*, 25 Kan. 92; *Kerr v. Reece*, 27 Kan. 469; *O'Flanagan v. Case*, 41 Kan. 183, 21 Pac. 96.)"

All other matters have been fully considered, but require no further comment. The orders of the district court should be affirmed.

It is so ordered.